THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LOUIS HENRY LEAVITT, Appellant.

Argued April 5, 1950; decided June 1, 1950.

*W. Roger Pratt* for appellant. I. The information, which charged defendant with knowing possession of policy slips, should have been dismissed at the close of the People's case as a matter of law for a complete failure of proof. (*People* v. *Wolosky,* 296 N. Y. 236; *People* v. *Leon,* 262 N. Y. 664.) II. The remarks made by the assistant district attorney on summation were improper and the motion for a mistrial should have been granted. (*People* v. *Minkowitz,* 220 N. Y. 399; *People* v. *Forte,* 277 N. Y. 440; *People* v. *Fielding,* 158 N. Y. 542.) III. The information was jurisdictionally defective as a matter of law, for lack of supporting legal evidence, and defendant's motion for dismissal should have been granted. (*People* v. *Glen,* 173 N. Y. 395; *People* v. *Nowak,* 5 N. Y. S. 239; *People* v. *Gade,* 6 N. Y. S. 2d 1018.) IV. The trial court improperly commented on the evidence. (*People* v. *Snyder,* 297 N. Y. 81.)

*Everett L. Arthur, District Attorney (James F. Dowling* of counsel), for respondent. I. The information was sufficient as a matter of law. (*People* v. *Lee,* 151 Misc. 431; *People* v. *Gade,* 6 N. Y. S. 2d 1018.) II. Defendant was clearly shown to have been in actual possession of the lottery slips or tickets. (*People* v. *Crawford,* 25 N. Y. S. 2d 259; *People* v. *Johnson,* 244 App. Div. 712; *People* v. *Revolta,* 162 Misc. 555.) III. The penciled memorandum was clearly admissible in evidence. (*People* v. *Ryan,* 263 N. Y. 298; *People* v. *Davis,* 56 N. Y. 95; *Greenfield* v. *People,* 85 N. Y. 75; *Tilson* v. *Terwilliger,* 56 N. Y. 273; *Waldele* v. *New York Central & H. R. R. R. Co.,* 95 N. Y. 274.) IV. There were no errors committed on the trial which were prejudicial to defendant and the jury's verdict should not be disturbed. (*People* v. *Hoch,* 150 N. Y. 291; *People* v. *Watson,* 216 N. Y. 565; *People* v. *Priori,* 164 N. Y. 459; *People* v. *Smith,* 114 App. Div. 513; *People* v. *Trombino,* 238 App. Div. 61, 262 N. Y. 689.) V. The verdict is clearly in accord with the evidence and the conviction should be affirmed.

Conway, J. On April 22, 1949, shortly after 10:00 p.m., State troopers accompanied by a detective of the Utica police department drove to a residence in Westmoreland. One of the State troopers noticed a truck backed against the porch. He described it as a "van-type affair with a canvas covering the back opening of the van." He testified that he lifted the canvas and observed two men on the truck. One of them was the defendant. The other was one West. Defendant was standing and was not engaged in any activity. There were on the truck a great many closed cardboard boxes, a machine capable of folding envelopes or tickets and some electrical equipment. The boxes contained lottery tickets which bore the names "Liberty" Week No. 23, June 10, 1949, 25 cents; "Lucky Strike" Week No. 26, July 1, 1949, 50 cents; and "Champ" Week No. 27, July 8, 1949, 50 cents. The witness testified that when he asked defendant what he was doing on the truck the latter replied that he had sold the equipment and was there to help move it but that the boxes did not belong to him. That was all of the evidence offered by the People except for Exhibit No. 7 which was received over the objection of defendant. It was a written note which the witness asserted he found in one of the boxes while unloading the truck at the police barracks during the

afternoon of the day following the arrest. It read: "Don't fold week 27 until you check with Hank. Mills closed there that week there will be blocks to take out." The witness referred to defendant as Hank throughout his testimony.

Defendant rested his case after presenting the testimony of the two men, West and Johnson, arrested with him at the residence. They were to be separately tried later. Those witnesses gave testimony favorable to defendant and thus added nothing to the case for the prosecution.

At the close of the People's case and also at the conclusion of the entire case defendant moved to dismiss the information contending that as a matter of law the People had failed to demonstrate that defendant had violated section 974 of the Penal Law.

That section, insofar as relevant, provides that one "* * * *who shall have in his possession, knowingly,* any writing, paper or document, representing or being a record of any chance, share or interest in numbers sold, drawn or selected, or to be drawn or selected, or in what is commonly called ' policy ', or in the nature of a bet, wager or insurance, upon the drawing or selection, or the drawn or selected numbers of any public or private lottery; or any paper, print, writing, number, device, policy slip, or article of any kind such as is commonly used in carrying on, promoting or playing the game commonly called ' policy '; * * * is a common gambler, and guilty of a misdemeanor." (Emphasis supplied.)

Section 975 provides that mere possession is " presumptive evidence of possession thereof knowingly and in violation of the provisions of section nine hundred and seventy-four."

It is contended that there was no evidence that defendant had possession of, or was aware of the existence of the policy slips. It is not disputed that the papers in the boxes were policy slips. Since possession in itself is made a criminal offense it is essential that defendant's possession be " *conclusively* " shown. (*People* v. *Wolosky,* 296 N. Y. 236, 238; *People* v. *Rosen,* 294 N. Y. 761; *People* v. *Leon,* 262 N. Y. 664.) To put it another way it must be conscious possession. In the case at bar the evidence fails to show that defendant had physical possession, custody or control of the policy slips. He was not the owner of, or in control of the truck on which the slips were found.

There was no evidence to connect him with the house, as owner, lessee, or occupant. It is evident that whether or not there is a case against the defendant depends upon People's Exhibit No. 7 which was received in evidence over his objection. The admission of that slip of paper without laying a proper foundation for its receipt was error. The handwriting was not identified and so the author is unknown. There was no suggestion as to the intended recipient. No evidence of identity of defendant and author or of defendant and intended recipient was offered. No evidence was offered to show the approximate time at which it was written.

By reason of the inconclusive and circumstantial nature of the evidence adduced, the People failed to establish defendant's guilt beyond a reasonable doubt. (*People* v. *Taddio,* 292 N. Y. 488; *People* v. *May,* 290 N. Y. 369, 373; *People* v. *Lewis,* 275 N. Y. 33, 39; *People* v. *Suffern,* 267 N. Y. 115, 127.)

There were other errors in the conduct of the trial of which notice should be taken. The charge to the jury failed to meet the requirements indicated in *People* v. *Wallens* (297 N. Y. 57). The defendant was entitled to have the jury instructed on the law. (See Code Crim. Pro., § 388, subd. 7; §§ 389, 420.) The court failed to charge the jury that a defendant is presumed to be innocent until the contrary is established beyond a reasonable doubt; that the People have the burden of proof of establishing guilt; that if there be a reasonable doubt as to the defendant's guilt he is entitled to an acquittal. In addition the court usurped the function of the jury in commenting on the credibility of a witness for defendant saying, "And I will say another thing — that *I wasn't quite satisfied with Mr. Johnson's story.*" (Emphasis supplied.) (*People* v. *Ohanian,* 245 N. Y. 227.) Johnson was a witness for defendant who had testified that he had purchased machinery from the defendant who was apprehensive about payment for it. Johnson had further testified he had told the defendant that if he came to the residence at which the arrest took place between 8:30 P.M. and 9:00 P.M. he would have a substantial sum of money for him; that the defendant had no connection with the lottery tickets which the witness had placed on the truck together with one machine. Thus it was the " story "

of the chief witness for the defense with which the court announced his dissatisfaction.

Finally, the assistant district attorney in his summation to the jury commented on defendant's failure to take the witness stand as follows: " Mr. Leavitt, I didn't hear him get on the stand — he is charged with the crime here. Mr. Pratt says that he had ducked on the truck to get out of the rain, but you or I wouldn't sit back and have the state police or anyone else accuse us of doing any wrong if we were in fact innocent, would we, gentlemen. There is your proof sitting right there in that chair (indicating)."

Counsel for defendant moved for a mistrial which the court denied in the following language: " You mean you want to throw this trial up and have a new one? I don't think so." It is true that the assistant district attorney said subsequent to his improper comment that " I do not wish to be misconstrued, we could not compel Mr. Leavitt to take the stand, and he didn't have to take the stand  *  *  *." The damage had been done. Even thereafter the jury was not advised that defendant's failure to testify did not create any presumption against him. (Code Crim. Pro., § 393.) Improper comment by a District Attorney concerning the failure of a defendant to testify is reversible error. (*People* v. *Minkowitz,* 220 N. Y. 399; see, also, *People* v. *Forte,* 277 N. Y. 440; *People* v. *Fielding,* 158 N. Y. 542.)

The judgments should be reversed and the information dismissed.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Judgments reversed, etc.