OPINION OF THE COURT
Fuchsberg, J.
We hold that, in the circumstances of this criminal case, it was reversible error for the trial court to have refused a *128 request to charge that the People had the burden of proving every element of the crimes charged beyond a reasonable doubt when the ground for the refusal was that the court had already so advised the jury in a preliminary address at the outset of trial.[1]
The appellant, Richard Newman, was charged with multiple counts of assault, larceny and robbery, all stemming from a subway altercation in which a passenger was robbed of six dollars. After a vigorously contested trial,[2] the jury acquitted him of three counts of robbery, but found him guilty of assault in the second degree (Penal Law, § 120.05, subd 6), robbery in the third degree (Penal Law, § 160.05) and larceny in the third degree (Penal Law, § 155.30, subd 5). The Appellate Division, deeming the third degree larceny a lesser included offense of the third degree robbery, modified the judgment of conviction "on the law and as a matter of discretion in the interest of justice” by striking the lesser count, but otherwise affirmed (59 AD2d 624). The case is now here by permission of an Associate Judge of this court. For the reasons which follow, we are of the opinion that a new trial is required.
CPL 300.10 (subd 2), in language that simply restates a venerable postulate, mandates that a trial court’s instructions to a jury "must state the fundamental legal principles applicable to criminal cases”. It hardly seems necessary to point to the fundamental nature of the constitutional precept that each essential element of a crime must be proved beyond a reasonable doubt (see Matter of Winship, 397 US 358; People v Green, 35 NY2d 437, 442). In applying this mandate, it must be remembered that a case in the end is the sum of each of its parts. As New York’s codification of the principle puts it, "No conviction of an offense by verdict is valid unless based upon trial evidence which is sufficient and which establishes beyond a reasonable doubt every element of such offense and the defendant’s commission thereof’ (CPL 70.20).
Examining the record, we note that in the present case the trial court in fully acceptable language indeed did tell the jury that "the prosecution is put on notice by a mandate of law that they must prove the defendant’s guilt of each and every material element of the indictment, all beyond a reasonable *129 doubt”. However, it was not in his charge that he did so, but only in the course of preliminary remarks delivered before counsel made their opening statements and, therefore, before any proof had been presented. In contrast, days later, when each side had completed its proof and closing argument, he rendered no such instruction, either in words or substance. That is not to say that all the components of CPL 70.20 were omitted. The Trial Judge separately, and adequately, explained what was meant by "reasonable doubt”. And at another point in his charge he enumerated the elements of each crime for which Newman was being tried, reading the indictment and the applicable sections of the Penal Law. But, reasonable doubt was not coupled with his reference to the elements of the crimes. In short, at no point was the jury advised in the charge that the burden of proving guilt beyond a reasonable doubt attached to each material element of the crimes rather than merely to some generalized concept of the crimes as a whole.
Sensitive to this omission, counsel, promptly upon the conclusion of the charge and before the jury had commenced its deliberations, specifically requested a supplementary instruction "that each and every element of the crime charged must be proved beyond a reasonable doubt.” The court denied the request, explaining, "No, I read the statute to them. I think it was quite definitive and I think they understood”. The request should have been granted. That the Trial Judge, in his talk to the jurors at the beginning of the trial, had taken that occasion to inform them of the precise concept which counsel would later ask be charged is almost beside the point. The eventual defective charge was not rendered harmless thereby.
It is well and good for Trial Judges to give jurors the benefit of an introductory and explanatory address to help dissipate some of the mystery that may lurk in laypersons who are about to undertake the responsibilities of playing a significant and determinative, albeit transient, role in the adjudicative process. It is also more than helpful, and in some cases essential, that jurors be familiarized with pertinent rules and procedures peculiar to the law and the courts and perhaps the particular matter at hand. Every Judge who has had to preside over a jury trial and every lawyer who has ever prepared or tried such a case appreciates the advantages of such indoctrination in easing the transition jurors must make as they move from their usual occupational environments into *130 the world of law (see CPL 260.30; Prettyman, Jury Instructions — First or Last? 46 Amer Bar Assn J 1066).
The desirability of orientation, however, does not excuse the requirement for the eventual predeliberation instructions which would ordinarily be included in a charge in a particular case. To believe that the first is a substitute for the second, or to act as if it does not matter when but only that a charge is given, is to misapprehend the function of the latter. For a charge should do more than merely articulate the legal principles applicable to the case to be decided. Among other things, it should also focus attention on the specific factual issues raised by the evidence to which the principles are to be applied (Green v Downs, 27 NY2d 205, 208; 1 Dowsey, Charges to the Jury and Requests to Charge in a Criminal Case, § 8; cf. 1 NY PJI — Civil 1:6).
The presentation of the proofs as they have actually developed, the conflicts thereby created in the minds of jurors, the contentions advanced on interrogation and in argument by opposing counsel — these are the sort of things that turn dry-sounding legal propositions into living laws whose significance jurors will readily appreciate and apply as tools to the resolution of a case they have come to know. On the other hand, before the jurors will have experienced this exposure to the trial process, the same words, when heard by the untutored ear for the first time, may come off as little more than abstract and highsounding phraseology. A charge given as here, before any of the evidence was in and before the witnesses had been heard or seen, indeed before the lawyers had even opened on what they intended to prove, obviously is not suited to that purpose. In brief, the issue crystallization process can only achieve its potential if detailed instructions are given immediately before the jury’s deliberation. Introductory remarks are no substitute (People v Cardinale, 35 AD2d 1073).
Moreover, the time interval between the outset of trial and the point at which jurors begin their deliberations, what with the plethora of facts and arguments to which they may be exposed in the interim, makes it extremely unlikely that preliminary instructions would carry much weight in the jury room. Common experience teaches that things we were told most recently are those we will usually remember. And it is no accident of statutory draftsmanship, but rather the product of logic and long experience, that in every one of the United States, without exception, the practice is to charge at a *131 terminal stage of the case (see, generally, 23A CJS, Criminal Law, § 1299). In our own, as in most, it is at the "conclusion of the summations” (CPL 300.10).
It also goes without saying that even the premature instruction with which we here are concerned, recited as it was at a time when at best it could only be surmised as to what the proof would turn out to be, was not co-ordinated with what later would turn out to be the evidence relevant to each specific element that had to be proved to establish guilt (see Green v Downs, supra). Such a charge, without more, would in any event have run the risk that it would not be sufficiently comprehensible in the context of a case tried on a multicount, multielement indictment like the one this defendant faced.
For these reasons, the order of the Appellate Division should be reversed and a new trial ordered on the counts of assault in the second degree and robbery in the third degree.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order reversed and a new trial ordered in accordance with the opinion herein.

. Because we have so concluded, we find no occasion to reach the other alleged errors urged on us by the appellant.

. This was a second trial. The jury had disagreed in the first one after advising the trial court that there was "a problem in deciding guilt or innocence”.